IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRANDON C. RONDON, ) | |
| ) | Case No. 24 CV 01494 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brandon C. Rondon ("Rondon") filed a six-count amended complaint against Defendant Allstate Insurance Company ("Allstate") for monetary damages arising from and related to Allstate's alleged breach of contract. Before the Court is Allstate's motion to dismiss Counts II and III for breach of the implied covenant of good faith and fair dealing based on Allstate's termination of Rondon's contract and Allstate's interference in the sale of Rondon's agency and Count VI for false light invasion of privacy. For the following reasons, the Court grants Allstate's motion to dismiss Counts II, III, and VI.[1]

**I.  Background**

The Court construes the following facts from the amended complaint as true. Rondon and Allstate entered into a contract referred to as the Allstate R3001 Exclusive Agency Agreement ("EA Agreement"). (Dkt. 8 ¶ 1.) Under the EA Agreement, Rondon became an Allstate Exclusive Agent ("Exclusive Agent"), which authorized him to sell insurance policies on behalf of Allstate as an independent contractor in exchange for commission. (*Id.* ¶¶ 1, 17–18.) In March 2019, Rondon began training to become an insurance agent under Allstate's Enhanced Compensation Program ("ECP"),

---

[1] Rondon voluntarily agreed to dismiss Count V for unjust enrichment. (*See* Dkt. 18 at *4.)

1

which paid higher commissions than it paid Allstate agents who were not in the ECP. (*Id.* ¶¶ 28, 31.) On or about June 1, 2019, Rondon opened an Allstate agency in Oklahoma and began selling insurance policies on behalf of Allstate. (*Id.* ¶ 29–30.) Rondon's agency became the fastest growing agency in Oklahoma, and in 2020, became one of six Allstate agencies leading the United States in growth and sales. (*Id.* ¶ 30.)

The value of each Allstate insurance policy Rondon sold became part of his "book of business." (*Id.* ¶ 19.) The EA Agreement specifies that each Exclusive Agent's economic interest in their book of business includes the right of the Exclusive Agent to (1) sell their economic interest in the business to an approved buyer, or (2) receive a termination payment from Allstate, if vested after five years. (*Id.* ¶ 22.) "Upon termination of the EA [A]greement, an [Exclusive Agent] has 90 days to find an Allstate-approved buyer for their economic interest, reach an agreement with that buyer, and close the sale with that buyer." (*Id.* ¶ 23.) In order for an existing Exclusive Agent to be considered as a potential purchaser of a book of business, they must "meet the then current qualifications established by [Allstate]," the parameters of which are outlined in objective criteria. (*Id.* ¶ 25–26.)

An Exclusive Agent who does not complete the sale of their book of business within the 90-day window will receive from Allstate a termination payment, which is "generally less than 50% of the sale value of the economic interest." (*Id.* ¶ 23.) The EA Agreement states that "[t]he only times Allstate is involved [in the agency sale] is to approve the buyer when [the Exclusive Agent] elect[s] to receive the termination payment." (*Id.* ¶ 24.) Additionally, under the terms of the EA Agreement, Allstate has sole contractual discretion to approve or reject a potential buyer of the Exclusive Agent's agency, (*id.* ¶ 64), and terminate the EA Agreement, with or without cause (*id.* ¶ 58.)

The amended complaint alleges that "Allstate realized the ECP plan was exceeding estimated costs and subsequently began searching for reasons to terminate the contracts of agents under the ECP, like [] Rondon." (*Id.* ¶ 32.) On or about March 1, 2021, Allstate, without providing any reason,

informed Rondon that it intended to terminate his contract. (*Id.* ¶ 39.) On or about March 5, 2021, Allstate terminated Rondon's EA Agreement without providing a reason. (*Id.* ¶ 40.) Because Rondon had been an Exclusive Agent for fewer than five years, he was not vested under the EA Agreement and thus was ineligible for a termination payment. (*Id.*) Allstate thus gave Rondon ninety days to sell his agency's book of business, after which Rondon immediately began searching for a buyer. (*Id.* ¶ 40–41.) Rondon alleges that after he presented Allstate with a potential buyer for approval, Allstate leadership successfully dissuaded that potential buyer from purchasing Rondon's book of business. (*Id.* ¶ 41–42.) Rondon ultimately sold his book of business to another Allstate agent for $350,000—approximately $550,000 less than its market value. (*Id.* ¶¶ 45, 48.)

Rondon also alleges that on or about June 30, 2021, while attempting to renew his insurance license, Rondon learned that he was under investigation by the Oklahoma Department of Insurance ("OK DOI") because Allstate had flagged Rondon's license for fraud. (*Id.* ¶ 43–44.) After Rondon provided OK DOI with clarification, OK DOI reinstated his license and fined Allstate $15,000 for making a frivolous claim. (*Id.* ¶ 44.)

Rondon thereafter initiated this action against Allstate. The amended complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, unjust enrichment, and false light invasion of privacy.

**II.     Legal Standard**

To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility if the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, this Court must accept as true all factual allegations contained in the complaint, *see Erickson*

*v. Pardus*, 551 U.S. 89, 94 (2007), as well as draw all favorable inferences for the plaintiff. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### III. Discussion

The Court turns first to Rondon's claims for breach of the implied covenant of good faith and fair dealing, then to Rondon's claim for false light invasion of privacy.

#### A. **Breach of the Implied Covenant of Good Faith and Fair Dealing (Counts II and III)**

Rondon's amended complaint asserts a pair of counts for breach of the implied covenant of good faith and fair dealing based on two categories of conduct: Allstate's termination of Rondon's contract (Count II) and Allstate's interference with Rondon's contractual right to sell his economic interest in the agency to an approved buyer within 90 days (Count III). Allstate argues that Rondon fails to state claims for breach of the implied covenant because he cannot establish the existence of a special relationship between the parties. Rondon claims that the unequal bargaining power between Allstate and its Exclusive Agents supports the existence of a special relationship, and moreover argues that Allstate, by having failed to move to dismiss claims for breach of the implied covenant in Rondon's original complaint, waived its argument as to Counts II and III for breach of the implied covenant.

As an initial matter, the Court finds that Allstate did not waive any argument to dismiss Counts II and III, as failure-to-state-a-claim defenses are exempted from Federal Rule of Procedure 12's waiver rule, *see Ennenga v. Starns*, 677 F.3d 766, 772–73 (7th Cir. 2012); Fed. R. Civ. P. 12(g)–(h), and Rondon cites no case law holding otherwise.

Shifting to the merits, under Oklahoma law, "every [] contract contains an implied covenant of good faith and fair dealing." *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 728 (10th Cir. 1991). "To maintain a free-standing claim for violation of good faith and fair dealing, [a plaintiff] must establish that a 'special relationship' existed between the contracting parties[.]" *Rivera-Pierola v. Bd. of*

4

*Regents for Oklahoma Agric. & Mech. Colleges*, 2022 WL 1527526, at *5 (W.D. Okla. May 13, 2022); *see also Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559, 563–64 (Okla. 2004)). A special relationship "that gives rise to tort liability for bad faith is marked by (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk." *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160 (Okla. 2010); *see also Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226–27 (Okla. 1988)). In instances involving "ordinary commercial contracts," a breach of the implied covenant of good faith and fair dealing "merely results in damages for breach of contract, not in independent tort liability." *Rivera-Pierola*, 2022 WL 1527526, at *5 (quoting *Majesty Hosp., L.L.C. v. Dyess*, 2009 WL 10673044, at *2 (W.D. Okla. Oct. 13, 2009)).

Rondon has failed to allege facts sufficient to show the existence of a special relationship between him and Allstate. While Rondon's allegations of a disparity in bargaining power between the parties support the notion that the EA Agreement is a contract of adhesion, the Court need not decide this issue because Rondon has failed to allege any facts suggesting that the purpose of the EA Agreement was anything "other than to advance the commercial interests of the parties," as opposed to eliminate risk. *Cimarex Energy Co. v. Calhoon*, 2012 WL 1371386, at *4 (W.D. Okla. Apr. 19, 2012). Indeed, Oklahoma courts have expressed reluctance to find a special relationship outside of the insurance context, where elimination of risk is central to the purpose of the contract.[2] Here, Rondon and Allstate entered into the EA Agreement for the purpose of facilitating the sale of Allstate insurance policies—not to eliminate risk. *See Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 999 (10th Cir. 2008) (holding that an insurance agency agreement is "based upon each party's attempt to obtain a

---

[2] *See, e.g., Brown v. Elephant Talk Communs. Corp.*, 2020 WL 7220793, at *6 (W.D. Okla. Dec. 7, 2020 (consulting agreement); *Warrenfeltz v. Hogan Assessment Sys.*, 2018 WL 1546559, at *2–*3 (N.D. Okla. Mar. 29, 2018) (stockholder agreement); *Cimarex Energy Co.*, 2012 WL 1371386, at *3–*4 (lease); *Orthman v. Premiere Pediatrics, PLLC*, 545 P.3d 124, 138 (Okla. Civ. App. 2024) (agreement between patient and medical professionals in the context of safeguarding electronic health records); *Rodgers*, 756 P.2d at 1226–27 (Okla. 1988) (commercial loan).

5

commercial advantage and is dissimilar to situations where the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity") (quotations omitted). In any event, Rondon has failed to demonstrate a special relationship here akin to that between an insurer and insured.

In the absence of a special relationship, Rondon fails to state a claim upon which relief may be granted as to Counts II and III.

B. **False Light Invasion of Privacy (Count VI)**

Next, the Court considers whether Rondon has sufficiently stated a claim for false light invasion of privacy. The amended complaint alleges that Allstate, by having made a frivolous and unfounded claim to OK DOI, placed Rondon in a false light and jeopardized his professional license. Allstate argues that Rondon's claim for false light invasion of privacy is time-barred under the applicable statute of limitations and that Rondon fails to plausibly allege the necessary element of "publicity."

To establish a *prima facie* case of false light invasion of privacy under Oklahoma law, a plaintiff must show that "(1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Mitchell v. Griffin Television, L.L.C.*, 60 P.3d 1058, 1061 (Okla. Civ. App. 2002). A matter is given publicity "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Eddy v. Brown*, 715 P.2d 74, 78 (Okla. 1986) (quoting Restatement of Torts (Second) § 652D, comment (a)). The communication must "reach[], or [be] sure to reach the public." *Id.* Disclosure to a single person or even to a small

group of persons does not equate to publicity. *Id.* (element of publicity not satisfied when "only a limited number of co-workers heard" the relevant information) (emphasis omitted).

The Court finds that Rondon fails to sufficiently allege the element of publicity. Rondon alleges that Allstate filed its baseless claim to OK DOI, but fails to identify a single member of the public who learned of such claim. Rondon's assertion that "had [his] license been terminated, that would be reflected on the public website," (Dkt. 18 at *10), is speculative and cannot by itself support an allegation of publicity. *See Park v. Trican Well Service, L.P.*, 2015 WL 4886992, at *3 (W.D. Okla. Aug. 17, 2015) (dismissing plaintiff's claim for false light invasion of privacy where "contention that [plaintiff's] personal information was revealed to 'hundreds or thousands of individuals' is merely speculative"). The Court grants Defendant's motion to dismiss as to Count VI for failure to state a claim.

**IV.  Conclusion**

Accordingly, the Court grants Allstate's motion and dismisses Counts II, III, and VI of Rondon's amended complaint.

SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: 3/27/2025